**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**ANTHONY LEE JONES**                                                               **PLAINTIFF**

**VS.**                                           **CIVIL ACTION NO.  3:18-cv-33-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                                     **DEFENDANT**

## MEMORANDUM OPINION

This matter is before the court pursuant to 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security ("Commissioner") denying the application of Anthony Lee Jones for disability insurance benefits under the Social Security Act. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit.

The court, having reviewed the administrative record, the briefs of the parties, the applicable law, and having heard oral argument, finds the Commissioner's decision denying benefits should be affirmed.

### *Facts and Procedural History*

On September 26, 2014, Anthony Lee Jones filed his application for DIB, alleging onset of disability on April 25, 2014. After the application was denied at the lower levels, a hearing was held before an administrative law judge ("ALJ") on June 21, 2017. An unfavorable decision was issued on August 28, 2017. The Appeals Council denied review. The case is now before this court on appeal.

The ALJ found that Jones had severe impairments of psychogenic movement disorder, conversion disorder, depressive disorder, anxiety disorder, and history of opioid dependence. After

determining that the claimant did not meet any listed impairment, the ALJ determined Jones's residual functional capacity, finding he could perform light work with the following limitations: lifting and carrying up to twenty pounds occasionally and ten pounds frequently; sitting, standing, and walking up to six hour in an eight-hour workday; occasionally climbing ramps and stairs but no ladders, ropes, or scaffolds; avoidance of concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; moderate exposure to hazards such as machinery and heights; no driving or moving equipment; simple, routine, and repetitive tasks, and making simple work-related decisions; able to respond to supervisors, co-workers, and usual work situations and to deal with changes in the routine work setting.

At step four, the ALJ found that Jones was incapable of performing past relevant work as a pump press operator, groundskeeper, or customer service representative. However, relying on the testimony of a vocational expert, the ALJ found that other jobs existed in significant numbers in the national economy that claimant can perform, namely housekeeping cleaner, router, and cafeteria attendant. The ALJ thus found claimant was not disabled.

The claimant asserts the ALJ's decision is not supported by substantial evidence and is not based upon proper legal standards because the ALJ erred in her evaluation of (1) Dr. Mark LeDoux's records; (2) Exhibits 2F, 5F, and 15F; (3) Dr. Bola Adamolekun's medical source statement; (4) Dr. Jim Pang's medical source statements; and (5) Julie Hill's third-party function report.

### *Law and Standard of Review*

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir.

1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164(5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434(5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[2] First, claimant

---

[1] *See* 20 C.F.R. § 404.1520 (2012).
[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

must prove he is not currently engaged in substantial gainful activity.[3] Second, claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three, the ALJ must conclude claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.[5] Fourth, claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[6] If claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education, and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which claimant can perform, claimant is given the chance to prove that he cannot, in fact, perform that work.[8]

## *Analysis and Discussion*

I.      Dr. LeDoux

In October 2012, Jones complained of tremors and convulsions to cardiologist Jiang Cui. Dr. Cui diagnosed him with inappropriate sinus tachycardia and treated him with a beta blocker. Although claimant reported some temporary improvement, he continued to complain of tremors and was referred to neurologists Debashis Biswas and Satish Raj. Following an examination, Dr. Biswas could make no neurological diagnosis for the tremors, so he referred Jones to Dr. Mark

---

[3] 20 C.F.R. § 404.1520(b) (2012).

[4] 20 C.F.R. § 404.1520(c) (2012).

[5] 20 C.F.R. § 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that impairment is of such severity that it would prevent any person from performing substantial gainful activity.  20 C.F.R. § 404.1525 (2012).

[6] 20 C.F.R. § 404.1520(e) (2012).

[7] 20 C.F.R. § 404.1520(f)(1) (2012).

[8] *Muse*, 925 F.2d at 789.

LeDoux, a movement disorders specialist. On examination in November 2014, Dr. LeDoux concluded claimant's tremor was "somewhat distractable" and "clearly psychogenic in origin," related to anxiety, for which claimant had been treated medically and therapeutically since June 2012.[9] On a follow-up visit, Dr. LeDoux again noted normal physical findings and diagnosed claimant's tremors as psychogenic.[10] During an April 2017 neurology follow-up, the claimant was assessed with severe psychogenic conversion disorder manifesting with psychogenic movement disorder and psychogenic non-epileptic seizures and was told that he need only follow- up with his psychiatrist and a neuropsychologist.

Claimant argues the ALJ "cast aside" Dr. LeDoux's findings and "did not seem to see the serious nature of Mr. Jones' condition." However, the ALJ evaluated Dr. LeDoux's records and incorporated them into the RFC: "Despite the fact that the clinical and laboratory evidence does not support any disabling cardiac or neurological impairments, the undersigned has considered the claimant complaints and his diagnosis of psychogenic movement disorder and conversion disorder in reducing his residual functional capacity."[11] Notably, while Dr. LeDoux found claimant's tremor to be distractible, consultative psychological examiner Dr. Yvonne Osborne observed no physical restrictions and only mild tremors which subsided during the interview.[12] This Court cannot reweigh the evidence. The ALJ considered, evaluated, and weighed Dr. LeDoux's records, and substantial evidence supports her decision.

---

[9] Doc. 10 at 21; Doc. 10-1 at 653-54, 1021-32.
[10] Doc. 10 at 21; Doc. 10-1 at 669-78, 316-17, 1021-32.
[11] Doc. 10 at 15.
[12] Doc. 10-1 at 817.

II.     Exhibits 2F, 5F, and 15F

Claimant argues the ALJ erred when—in assessing exhibits 2F, 5F, and 15F—she found that Jones' mental status examinations had "mostly been normal."

Exhibit 2F contains the records of treating psychiatrist Dr. Raymond Overstreet. In June 2014, Dr. Overstreet reported that Jones' "cardiac problems" were "finally corrected" and that he was feeling "much better."[13] He had gained weight, was sleeping better, and not having anxiety as often. Dr. Overstreet found "[n]o evidence of thought disorder" and Jones' showed "good judgment and insight." In an earlier visit in March, Jones' reported Xanax was controlling his anxiety and Paxil kept him from being depressed.[14] He denied suicidal thoughts, showed good judgment and insight, and did not appear anxious or depressed. In November 2013, claimant again reported his medication was controlling his anxiety and depression, although Dr. Overstreet reported he appeared anxious and nervous with some "some psychomotor agitation."[15] Earlier, in October, claimant reported episodes of marked anxiety, largely over his cardiac condition (which was later corrected as Dr. Overstreet reported) and Dr. Overstreet increased claimant's medications.[16]

---

[13] Doc. 10-1 at 446.

[14] Doc. 10-1 at 448.

[15] Doc. 10-1 at 450.

[16] Doc. 10-1 at 452. In August 2013, Jones reported his medications were "controlling the anxiety relatively well." *Id.* at 454. Earlier, in May, Jones developed severe headaches and afterwards was "nervous and anxious over his condition." *Id.* at 456. Dr. Overstreet observed claimant "tend[s] to worry excessively about any symptoms & that has probably aggravated [his anxiety]." In February 2013, Dr. Overstreet observed claimant was doing well and "handling things well . . . as long as he has the Xanax," and found no evidence of thought disorder." *Id.* at 458. Dr. Overstreet made similar observations in November 2012 (460), October 2012 (462), September 2012 (466), The only times Dr. Overstreet observed claimant visibly distressed, frustrated, anxious, and agitated were in June and July 212, when he was first started on Xanax and Seroquel (470-74).

Exhibit 5F evidences two visits with Dr. I. Harrison Evans. In August 2014, claimant complained to Dr. Evans of "panic attacks, body tremors, [and] night terrors[,] but the real reason is to stay on the medications that I'm on. I just moved here from Columbus."[17] Although Jones reported he felt "stable on current medications" and that "Paxil 'seems like it is working good when I remember to take it,'" he also reported being consistently depressed and having thoughts that he would be better off dead or wished he was dead. Jones returned to Dr. Evans in September for a medication follow-up. At both visits, Dr. Evans assessed claimant with an Axis I Major Depressive Episode-Moderate, but maintained his Paxil and Xanax and changed some of his other medications.[18]

Treatment records of Drs. Jim Pang and Melvyn Levitch comprise Exhibit 15F and substantially amount to monthly medication management visits. At some of these visits, claimant was observed as angry/irritable, anxious, and/or depressed. At others, he was observed with a normal mood/affect.[19] Occasionally where claimant presented as upset, it was noted that he had run out of Xanax.[20] In reporting Jones' continued disability to his place of employment, Dr. Levitch stated that "p[atien]t is less depressed" and "is disabled by his heart condition."[21] Similarly, in his treatment records from May 2015, Dr. Levitch noted Jones was "making good progress in therapy" and was "less depressed."[22]

---

[17] Doc. 10-1 at 539.

[18] Doc. 10-1 536-545.

[19] Doc. 10-1 at 820-45. In June 2015, Dr. Levitch checked the "no" box next to "anger/irritability" but then later on the same form checked the box indicating claimant was "angry/irritable" (829).

[20] Doc. 10-1 at 827, 828.

[21] Doc. 10-1 at 831-32.

[22] Doc. 10-1 at 836.

While some of the treatment records observe claimant as anxious/depressed/irritable, others observed that he was doing well, not depressed or anxious, and cooperative. Thus the ALJ's assessment of the treatment records contained in Exhibits 2F, 5F, and 15F was not erroneous.

III.     Dr. Adamolekun

Dr. Adamolekun's based his medical source statement on a single contact with claimant on December 3, 2015.[23] Dr. Adamolekun diagnosed claimant with seizures and conversion disorder and stated claimant's anxiety and bipolar disorder affected his physical condition. He opined that claimant's pain would frequently interfere with his attention and concentration and that he was incapable of even low-stress jobs. He made no comment on claimant's lifting ability or his ability to sit/stand/walk during a normal work day, but stated he would need a job that permitted shifting positions at will.

The ALJ discounted Dr. Adamolekun's medical source statement because it was based on a single observation. *See* 20 C.F.R. § 404.1527(c)(2) (treatment relationship is a factor in weighing medical opinions). Further, Dr. Adamolekun's statement is inconsistent with the record as a whole, including his own examination notes. In addition to the records contained in Exhibits 2F, 5F, and 15F (discussed above), Dr. Adamolekun observed "motor strength was normal, apart from bilateral grip testing in which the patient did not appear to give maximum effort. [P]atient has an intermittent tremor predominantly of the right upper extremity . . . and no spontaneous myoclonic jerks during this visit."[24] At a follow-up visit (not addressed in his medical source

---

[23] Doc. 10-1 at 1034.
[24] Doc. 10-1 at 1014-17.

statement), Dr. Adamolekun observed "no involuntary movements" and that Jones' "[a]mbulation was not limited. A tandem gait test showed no abnormalities."[25] *See* 20 C.F.R. § 404.1527(c)(3)-(4) (supportability and consistency as factors). Therefore, the record supports the weight the ALJ afforded Dr. Adamolekun's medical source statement.

IV. Dr. Pang

Claimant faults the ALJ for assigning little-to-no weight to three medical source statements provided by Dr. Pang. Claimant's argument, however, is unavailing.

In a December 2015 "to whom it may concern" letter, Dr. Pang opined, without support or explanation, that "Mr. Anthony Jones is totally and permanently unable to sustain gainful employment."[26] The ALJ properly gave little weight to this opinion because an individual's ability to sustain gainful employment is an issue reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1)-(3). The same is likewise true for Dr. Pang's April 2017 letter, in which he opined that "Mr. Jones is totally and permanently unable to sustain gainful employment."[27] However, Dr. Pang continued to state that Jones "cannot take directions or concentrate on a job due to his illness." This statement, along with Dr. Pang's April 2016 Mental Impairment Questionnaire, the ALJ discounted as inconsistent with Dr. Pang's treatment notes. In the questionnaire, Dr. Pang assessed claimant with marked restrictions in all areas, including activities of daily living, maintaining social functioning, and concentration, persistence, or pace.[28] Dr. Pang also assessed claimant with a marked limitation in all mental abilities and

---

[25] Doc. 10-1 at 1018-20.
[26] Doc. 10-1 at 1073.
[27] Doc. 10-1 at 1072.
[28] Doc. 10-1 at 869.

aptitudes needed to do unskilled work. However, Dr. Pang's own treatment records indicated claimant reported improvement with medications and had fair-to-good knowledge, insight, and concentration with intact thought processes and reasoning.[29] The limitations expressed in Dr. Pang's questionnaire are also inconsistent with Dr. Overstreet's records, which show predominantly normal mental status findings and an improvement with medication.[30] A treating physician's opinion may be assigned little or no weight when good cause is shown. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Good cause is shown when the treating physician's evidence is conclusory or unsupported. *Id.* Thus, the ALJ did not err in weighing Dr. Pang's medical source statements.

V.      Third Party Function Report

Julie Hill, claimant's then-girlfriend, completed a third party function report.[31] She reported that claimant was always in pain, spent most of his time in bed, lost interest in his hobbies, became less active, took longer to take care of his personal needs, had trouble standing/walking, and had problems getting along with others. She also indicated that he drove, shopped, cooked occasionally, took out the trash, socialized by phone, and visited his family. The ALJ considered this report, but gave it less weight due to internal consistencies and because Hill had a vested interest in the outcome. Because the ALJ considered the report and articulated her reasons for rejecting it, the Court finds no error.

*Conclusion*

---

[29] Doc. 10-1 at 822-25, 827, 829, 833, 835, 838, 841, 844, 886
[30] Doc. 10-1 at 446, 448, 450.
[31] Doc. 10-1 at 345-352.

The court finds, therefore, that substantial evidence supports the ALJ's decision in this matter, and it is thus affirmed. A final judgment consistent with this opinion will be entered.

SO ORDERED, this the 8th day of March, 2019.


/s/ David A. Sanders
 UNITED STATES MAGISTRATE JUDGE